b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| MARK JACQUES | CIVIL ACTION 1:17-CV-00523 |
| VERSUS | JUDGE DRELL |
| MEDICAL DEPARTMENT, U.S.P. POLLOCK, et al. | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Plaintiff Mark Jacques ("Jacques") and Defendant United States of America ("USA") both filed Motions for Summary Judgment (Docs. 28, 32). Because Jacques' has failed to show he was injured by the alleged delay in providing him with vision care, Jacques's motion for summary judgment should be DENIED and the USA's Motion for Summary Judgment should be GRANTED.

I. Background

Jacques filed this tort claim against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, alleging that, while he was incarcerated in the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"), medical care for his glaucoma was delayed for about three years (Docs., 1, 16).[1] Jacques is seeking monetary damages. Jacques is presently incarcerated in the United States Penitentiary in Lewisburg, Pennsylvania.

---

[1] Jacques clarified in his amended complaint (Doc. 16) that this suit is filed pursuant to the FTCA and is not filed pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

The USA answered the complaint (Doc. 25). Jacques and the USA both filed Motions for Summary Judgment (Docs. 28, 32). Those motions are now before the Court.

II. Law and Analysis

A. Standards governing the Motion for Summary Judgment generally.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials-- including the facts considered undisputed--show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.[2]

"A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" See Hefren v. McDermott, Inc., 820 F.3d 767, 771 (5th Cir. 2016) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment,

---

[2] Local Rule 56.2W (formerly 2.10W) also provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts.

2

a court must construe all facts and draw all inferences in the light most favorable to the non-movant. See Dillon v. Rogers, 596 F.3d 260, 266 (5th Cir. 2010). However, a mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

### B. Liability under the FTCA.

Liability under the FTCA exists when a claim sounds under existing state law. See Champion v. United States, 421 Fed. Appx. 418, 423 (5th Cir. 2011). The FTCA authorizes civil actions for damages against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission occurred. See 28 U.S.C. §§ 1346(b)(1), 2674; see also Longino v. U.S. Dept. of Agriculture, 912 F. Supp. 2d 424, 429 (W.D. La. 2012) (citing United States v. Olson, 546 U.S. 43, 44 (2005)).

Substantive state law determines whether a cause of action exists. See Johnston v. United States, 85 F.3d 217, 219 (5th Cir. 1996). Accordingly, state law controls liability for medical malpractice under the FTCA. See Hannah v. United States, 523 F.3d 597, 601 (5th Cir. 2008) (citing Ayers v. United States, 750 F.2d 449, 452 n. 1 (5th Cir. 1985)). Likewise, La. R.S. 15:751 imposes a duty to provide reasonable medical care for prisoners.[3] The standard of care imposed under

---

[3] To prevail on a negligence claim under Louisiana Civil Code arts. 2315 and 2316, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and, (5) actual damages (the damages element). See Brown v. Lee, 94-104 (La. App. 5 Cir. 7/13/94), 639 So.2d 897, 898-899, writ

Louisiana law for providing for the medical needs of inmates is that those services be reasonable. See Elsey v. Sheriff of Parish of East Baton Rouge, 435 So.2d 1104 (La. App. 1st Cir.), writ den., 440 So.2d 762 (La. 1983); see also Cole v. Acadia Parish Sheriff's Dept., 07-1386, (La. App. 3d Cir. 11/5/08), 998 So.2d 212, writ den., 2008-2875 (La. 2/6/09), 999 So.2d 784.

### C.   The USA's answer was not untimely.

Jacques contends he is entitled to summary judgment because the USA did not comply with this Court's Memorandum Order (Doc. 17) to answer within 60 days of service of the complaint (Doc. 19). However, since the USA was granted an extension of time in which to answer,[4] the answer was timely.[5]

### D.   The Louisiana MMA is not applicable.

Defendant contends that Jacques has not stated a claim for medical malpractice through a delay in his vision care under the Louisiana Medical Malpractice Act ("LMMA"), La. R.S. 40:1299.41, et seq.

The LMMA simply provides procedures for, and limitation on, such causes of action when the doctor is a *qualified health care provider*. See Trahan v. McManus, 97-1225 (La. 3/2/1999), 728 So.2d 1273, 1276. Thus, La. R.S. 40:1299.41, et seq.,

---

den., 94-2127 (La. 11/18/94), 646 So.2d 378 (citing Roberts v. Benoit, 605 So.2d 1032 (La. 1991); Fowler v. Roberts, 556 So.2d 1, 4 (La. 1989)).

[4] Jacques also argues USA's motion for an extension of time was untimely. However, it was filed on December 5, 2017, the date the answer was due (Docs. 19, 23). Therefore, the motion for extension was timely.

[5] On granting the extension of time, the Court ordered the answer filed on or before February 19, 2018 (Doc. 24). Since February 19, 2018 was a federal holiday, the answer was timely filed on February 20, 2018 (Doc. 25). See Fed. R. Civ. P. 6(a)(1)(C).

merely creates an exception to the general tort law and limits the liability of some, but not all, health care providers. See Chivleatto v. Divinity, 379 So.2d 784, 786 (La. 1979).

Jacques had his first optometry appointment on February 19, 2015. (Doc. 32-4, pp. 3-4/251). Jacques was prescribed eye drops and referred to an ophthalmologist. (Doc. 32-4, p. 5/251). Jacques was examined by an ophthalmologist on April 15, 2015, diagnosed with glaucoma in both eyes with posterior vitreous detachment, and prescribed eye drops. (Doc. 32-4, p. 10-14/251). The ophthalmologist noted the prison doctor was concerned about Jacques's intraocular pressure, but Jacques was not on any glaucoma medications. (Doc. 32-4, p. 10/251). Jacques was provided with the eye drops the next day, added to the Chronic Care Clinic to monitor his glaucoma, and provided with prescription eye glasses. (Doc. 32-4, pp. 14, 16, 22, 24/251). It appears that Jacques's vision care has continued regularly since then. (Doc. 32-4).

In his response, Jacques contends he has not filed a medical malpractice claim because he is not alleging that a health care professional was negligent in diagnosing or treating his glaucoma. Instead, he contends he is alleging that unspecified BOP employees negligently failed to provide him with a timely vision care appointment. It is not alleged or shown whether the employees responsible for setting appointments are or are not "qualified healthcare providers." [6]

---

[6] A delay caused by corrections officers or other non-health care providers does not fall within the purview of the Medical Malpractice Act. See La. R.S. 40:1299.41(A)(10).

Jacques is not claiming negligent medical care. Rather, he is claiming a delay in providing any medical care for his glaucoma. Jacques contends the delay in providing him with medical care may have resulted in damage to his vision caused by his glaucoma. Jacques contends he noticed changes in his vision, which is why he asked for a vision care appointment. Jacques alleges his requests for vision care were ignored for almost three years. That is not a medical malpractice claim for negligence in treatment by a qualified health care provider.

Defendant shows that Jacques's first electronic request for vision care was on February 9, 2014 (Doc. 32-4, pp. 1-/251). An electronic BOP record shows that Jacques missed optometry appointments on September 22, 2014 and December 12, 2014. (Doc. 32-4, p. 2/251). Jacques contends that record is fabricated, that he did not have appointments on those dates, and there is no record of appointments being made for him on those dates. Jacques contends he made written requests for vision care for almost two years before he made the electronic request, and that his written requests were ignored.

Jacques is not complaining about the quality of his vision care. He is only complaining about the delay in starting his vision care. As noted above, it has not been alleged or shown that qualified health care providers were responsible for setting Jacques's appointments. The parties disagree as to whether it was one year or three years before Jacques's vision care began, and also disagree as to whether Jacques missed any appointments before his first appointment in April 2015.

Therefore, the LMMA is not applicable to this case.

### E. There are no genuine issues of material fact that preclude a summary judgment in favor of the USA.

Defendant contends Jacques's first request for vision care was an electronic request dated February 9, 2014 (Doc. 32-4, p. 1/251). Defendant further alleges that Jacques failed to show up for his first two appointments, on September 22, 2014 and December 12, 2014 (Doc. 32-4, p. 2/251).

Jacques alleges he filed written requests for vision care long before he filed his electronic request. However, Jacques has not produced any evidence of his written requests. Jacques has not provided any copies of those requests, BOP records showing the requests were filed, or an affidavit from someone who saw him write and hand in such a request.

Jacques further contends the medical records show he never missed a medical appointment and never refused his medication. Jacques alleges that his FTCA administrative claim was denied by BOP Regional "Director" Jason Sickler[7] because Sickler "falsified" documents by changing dates on them and alleging Jacques failed to show up for two medical appointments. Jacques argues the medical records show he did not have appointments on the two dates alleged by Sickler.

Jacques has no evidence to support those allegations. The USA, however, has an electronic record from the Bureau of Prisons showing an Jacques missed his first two vision care appointments. Jacques provided a noted from "T. Miers," a Health Information Technician, that shows there were "no show" entries made for those appointments; no clinical encounters were documented; and no documents were

---

[7] Jason Sickler is Regional Counsel, not the Regional Director (Doc. 16-1, p. 9/16).

scanned (Doc. 34-1). Miers's note indicates the two appointments were set and Jacques missed them. Although it is possible that Jacques was not properly notified of those appointments, the only evidence before this Court shows he missed two appointments.

Therefore, the evidence shows Jacques requested vision care on February 9, 2014, appointments were made for him in September and December of 2014, both of which he missed, and Jacques had his first vision exam in April 2015. Jacques does not contend that he has not received adequate and timely vision care since then, so the possible scope of his claim ended in April 2015.

Consistent with the evidence, there could be an issue as to whether seven- or ten-month delays in Jacques's initial vision care appointment was too long. However, Jacques has not adduced any evidence of an injury to his vision caused by that delay. The first treating ophthalmologist noted that Jacques's glaucoma was stable. Although Jacques contends a subsequent ophthalmologist told him he would have had less damage to his vision if he had been afforded timely treatment for his glaucoma, Jacques has not provided any evidence to support that claim.

The constitutional minimum of standing has three requirements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complaint of; and (3) it must be likely that the injury will be redressed by a favorable decision. See <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992); <u>see also</u> <u>Three Expo Events, L.L.C. v. City of Dallas, Texas</u>, 907 F.3d 333, 341 (5th Cir. 2018). Jacques has failed to adduce any evidence of an

injury caused by the delay in his initial vision care appointment. Therefore, Jacques does not have standing to prosecute his claim.

Jacques has not carried his burden of proving his claims and providing evidence to refute Defendant's motion for summary judgment. Since there are no genuine issues of material fact that preclude a summary judgment, Jacques' Motion for Summary Judgment (Doc. 28) should be denied, the USA's Motion for Summary Judgment (Doc. 32) should be granted, and Jacques's action should be dismissed with prejudice.

### III. Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Jacques's Motion for Summary Judgment (Doc. 28) be DENIED, that Defendant's Motion for Summary Judgment (Doc. 32) be GRANTED, and that Jacques's action be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___27th___ day of December, 2018.

_____
Joseph H.L. Perez-Montes
United States Magistrate Judge